UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **LARRY GILBERT**, | ) | Case No. 1:08 CV 1867 |
| Petitioner, | ) | Judge Dan Aaron Polster |
| vs. | ) | REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE (Regarding ECF # 1) |
| **STEWART HUDSON**, | ) | |
| Respondent, | ) | Magistrate Judge James S. Gallas |

Larry Gilbert is a prisoner in state custody who seeks habeas corpus relief *pro se* under 28 U.S.C. §2254 from his two June 6, 2006 plea-bargained felonious assault convictions with firearm specifications. Gilbert asserts that his sentence imposed by the Court of Common Pleas of Cuyahoga County, Ohio is14 years. What Gilbert hopes to obtain from the federal district court in this matter is either an evidentiary hearing on defense counsel's performance in relation to the guilty pleas, or, in the alternative, an order to the state trial court to permit withdrawal of his guilty pleas. This case is referred to the undersigned for report and recommended disposition pursuant to LR 72.2.

## I. *Grounds for Habeas Corpus Review:*

Gilbert raises five constitutionally based contentions for federal review on habeas corpus. These grounds surround his focal claim of ineffective assistance of trial counsel which resulted in the negotiated guilty pleas and Gilbert's apparent dissatisfaction with the outcome of the state proceedings.

> **GROUND NO. 1:** Sixth and Fourteenth Amendment
>
> **Supporting Facts:** On the day of trial petitioner requested the trial court to dismiss his court-appointed counsel for sufficient reasons amounting to trial court counsel's "Failure to communicate before trial" and his "Failure to prepare for trial[.]" Petitioner raised such

issues with susfficient [sic] specificity as to warrant further inquiry by the trial court.  The trial court failed to inquire into such constitutional matters and instead refused to dismiss petitioners court-appointed counsel on the basis of the trial courts personal relationship with court-appointed counsel, notwithstanding, the trail [sic] court vouched for counsel's credibility as the reasons for not dismissing counsel, thereby forcing petitioner to proceed in a criminal case with an unwanted and unreliable counsel who was deficient in his performance.

**GROUND NO. 2:** Sixth and Fourteenth Amendments

**Supporting Facts:** The trial court abused its discretion and denied petitioner his constitutional rights to due-process of law and the right to counsel by it's rejecting petitioners request to dismiss his court-appointed counsel.  From the outset, the trial court displayed little to no interest in the concerns of the petitioner against court-appointed counsel.  Rather than conduct a "fair," "Impartial" and complete inquiry the trial judge relied on the general reputation of petitioners court-appointed counsel and never entertained the seriousness of petitioners complaint.

When petitioner brought the issue to the attention of the trial court, the trial court made it clear to petitioner that dismissing a friend of the court [appointed counsel] was not going to happen in his court room.  The trial court vehemently vouched for counsel's credibility, ability to try cases, reputation, experience and meetings with petitioner.  The trial court dismissed petitioners complaint against counsel without allowing petitioner to assert fully the cause for his request to dismiss his court-appointed counsel, thus the trial court failed to follow clearly established federal law.

**GROUND NO. 3:** Fourteenth Amendment

**Supporting Facts:** The denial of petitioners request to discharge his court appinted [sic] counsel is an important factor relating to the voluntariness of his guilty plea.  The trial court failed to inquire into whether petitioners plea was made volluntarily [sic] and of his own free will and accord.  Petitioners guilty plea was not made voluntarily as a result of court appointed counse's [sic] conflict of interest as to petitioners request to proceed to trial and counsel cohercing [sic] petitioner to plead to the charges and receive [sic] whatever the trial judge would render as [] sentence instead of gouing [sic] to trial.  The record in this case failes [sic] to contain any finding that petitioners plea was made voluntarily and an ommision [sic] on any on of the constitutional points renders the plea void or voidable on constitutional ground.  In order to try to fairly receive [sic] the effective [] of counsel, petitioser's [sic] family had to obtain counsel on behalf of petitioner because of the trial courts refusal to dismiss court appointed counsel.

**GROUND NO. 4:** Sixth and Fourteenth Amendment

**Supporting Facts:** Petitioner was denied the effective assistance of counsel by virtue of counsel[] conflict of interest with regard to petitioners motion to withdraw guilty plea. Petitioners appointed counsel failed to set forth the true and factusal [sic] nature of petitioners reasons for wanting to withdraw his guilty plea as a result of counsel himself. Petitioner was dissatisfied with appointed-counsels representation and the fact that he ahd [sic] coherced [sic] pertitioner [sic] into pleading guilty to the charges petitioner insisted on going to trial on. Counsel was not going to assert issues against himself in petitioners motion to withdraw guilty plea, which resulted in the trial court refusing to allow the petitioner to assert the true facts and nature of the matter and causing the trial court to render a fundamentaly [sic] unfair hearing on petitioners motion.

**GROUND NO. 5:** Fourteenth Amendment

**Supporting Facts:** [T]he appeals court abused it's discretion and denied petitioner his constitutional rights to due-process and equal protection of the laws when it failed to make a ruling on three separetly [sic] assigned errors on appeal now asserted as grounds 1, 2, and [sic] 4. The appellate court failed to apply clearly established federal law when reviewing and deciding on appellate issues as to whether each ground 1, 2 and 4 were either denied, overruled or made moot.

## II. *Procedural History and State appellate court Decision's Factual Findings:*

Gilbert has exhausted his remedies in state appellate court and filed his petition (dated July 30, 2008), within a year after his state appellate court conviction became final. See *State v. Gilbert*, 2008 WL 94571, 2008-Ohio-48, (Ohio App. 8 Dist. Jan 10, 2008), appeal not allowed, 118 Ohio St.3d 1434, 887 N.E.2d 1203, 2008-Ohio-2595 (Table Jun 04, 2008). The state appellate court issued the last decision on the merits, and that is the decision subject to federal habeas corpus review. See *Howard v. Bouchard*, 405 F.3d 459, 469 (6th Cir. 2005).

The state appellate court presented a detailed history of Gilbert's prosecution. "On habeas review, the state court of appeals's findings of fact must be presumed correct, and can only be discredited if the petitioner can show, by clear and convincing evidence, that the state appellate

court's findings were erroneous. 28 U.S.C. § 2254(e)(1).” *Mitzel v. Tate*, 267 F.3d 524, 537 (6th Cir. 2001); and see *Miller-El v. Dretke*, 545 U.S. 231, 240, 125 S.Ct. 2317, 2325,162 L.Ed.2d 196 (2005). The following facts are unchallenged and are set forth in detail by the state appellate court:

> {¶ 3} In an indictment filed December 9, 2005 in Cuyahoga County Common Pleas Court Case No. 474510, appellant was charged with two counts of felonious assault, each of which carried one- and three-year firearms specifications. A second indictment was filed against appellant and two co-defendants on March 31, 2006 in Case No. 479137, again charging appellant with felonious assault with one- and three year firearms specifications. FN1 Appellant pleaded not guilty to each of these charges.
>
> FN1. This indictment also contained two additional charges against one of the codefendants.
>
> {¶ 4} Case No. 474510 was scheduled for trial on the morning of June 6, 2006. As they waited for a jury, the court noted on the record that appellant's counsel had indicated to the court that appellant was “having issues” with the attorney, and while the court did not know exactly what the issues were about, it was unlikely to dismiss counsel and delay the trial. Although appellant complained that he had been unable to talk to his attorney at any of the pretrials, the court pointed out that appellant could have called or visited the attorney's office. The court then asked counsel to continue in plea discussions before the jury was called.
>
> {¶ 5} Later that day, the court held a change-of-plea hearing. At the hearing, the state expressed its understanding that the appellant wished to withdraw his not guilty plea in Case No. 474510 and enter a plea of guilty to the first count of felonious assault and to the attached three-year firearms specification. The state further expressed its understanding that appellant wished to withdraw his not guilty plea in Case No. 479137 and enter a guilty plea to felonious assault and a one-year firearms specification. In addition, the appellant agreed that he would give a truthful written statement and testify truthfully against his two co-defendants in Case No. 479137. The state further noted that the appellant agreed that the sentences in these two cases would be consecutive[.]
>
> * * * *

> {¶ 9} On July 28, 2006, appellant filed a motion to withdraw his guilty pleas in both cases. In these motions, he asserted that he did not "fully comprehend" the effect of consecutive sentences, and believed that he would prevail at trial. After this motion was filed, appellant retained new counsel and his assigned attorney was removed. The court then conducted a hearing on appellant's motion after which it denied the motion.
>
> {¶ 10} On September 1, 2006, the court sentenced appellant in Case No. 474510 to three years' imprisonment on the firearms specification to be served prior and consecutive to a sentence of five years' imprisonment on the base charge. The court further ordered that the sentence in this case was to be served consecutively to the sentence imposed in Case No. 479137. In Case No. 479137, the court sentenced appellant to a term of one year's imprisonment on the firearm specification to be served prior and consecutive to a sentence of five years' imprisonment on the base charge. The court also ordered that the sentence in this case would be served consecutively to the sentence imposed in Case No. 474510.
>
> *State v. Gilbert*, 2008 WL 94571, at *1-3.

**III. *Standard of Review under 28 U.S.C. §2254(d):***

Federal habeas corpus is "an extraordinary remedy and 'will not be allowed to do service for an appeal.'" *Bousley v. U.S.*, 523 U.S. 614, 621, 118 S.Ct.1604, 140 L.Ed.2d 828 (1998)( quoting *Reed v. Farley*, 592 U.S. 339, 354, 114 S.Ct. 2291, 129 L.Ed.2d 277 (1994)). Federal habeas corpus review is conducted under Congressionally circumscribed rules set out in §2254(d) which allow the writ to be granted in situations where the state appellate court decision is "contrary to" or "an unreasonable application" of "clearly established" Federal law as set forth by the Supreme Court of the United States or when there is an unreasonable determination of the facts.

A state appellate court decision is "contrary to" Supreme Court precedent when either "the state court confronts a set of facts that are materially indistinguishable from a [Supreme Court] decision ... and nevertheless arrives at a result different from [Supreme Court] precedent," or "'applies a rule that contradicts the governing law set forth' in those precedents." *Brumley v. Wingard*, 269 F.3d 629, 638 (6th Cir.2001)(quoting *Williams v. Taylor*, 529 U.S. 362, 405-06, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000); and see *Lockyer v. Andrade*, 538 U.S. 63, 73, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003). When the state decision does not identify what legal precedent or standard was used as the foundation for its decision, a deferential standard of review applies, which liberally states, "that a state court need not even be aware of all precedents, 'so long as neither the reasoning nor the result of the state-court decision contradicts them.'" *Mitchell v. Esparza*, 540 U.S. 12, 16, 124 S.Ct. 7, 10, 157 L.Ed.2d 263 (2003)( quoting *Early v. Packer*, 537 U.S. 3, 7-8, 123 S.Ct. 352, 154 L.Ed.2d 263 (2000) (*per curiam*)).

A state court decision is an "unreasonable application" of Supreme Court precedent when the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case. See *Rompilla v. Beard*, 545 U.S. 374, 380, 125 S.Ct. 2456, 2462, 162 L.Ed.2d 360 (2005); *Williams*, 529 U.S. at 413. Or conversely stated, " a federal court may grant relief when a state court has misapplied a 'governing legal principle' to 'a set of facts different from those of the case in which the principle was announced.'" *Wiggins v. Smith*, 539 U.S. 510, 520-21, 123 S.Ct. 2527, 2535, 156 L.Ed.2d 471 (2003)(quoting *Lockyer*, 538 U.S. at 76, 123 S.Ct. at 1175). The unreasonable application of Supreme Court precedent must, however, be "objectively" unreasonable. *Lockyer*, 538 U.S. at 75,

123 S.Ct. at 1174 (citing *Williams,* 529 U.S. at 410, 412, 120 S.Ct. at 1521-22); *Wiggins*, 539 U.S. at 520-21, 123 S.Ct. at 2535. That is, it must be more than incorrect or erroneous. *Ibid*. When the state court has rendered a decision, the federal reviewing court may not grant the writ in its "independent review of the legal question." *Lockyer v. Andrade*, 538 U.S. at 75, 123 S.Ct. at 1174; *Yarborough v. Alvarado*, 541 U.S. 652, 665, 124 S.Ct. 2140, 2150, 158 L.Ed.2d 938 (2004).

The phrase "clearly established Federal law" refers to holdings, as opposed to *dicta*, of the U.S. Supreme Court at the time of the relevant state court decision. *Lockyer v. Andrade*, 538 U.S. 63, 71-72, 123 S.Ct. 1166, 1172, 155 L.Ed.2d 144 (2003); *Williams v. Taylor*, 529 U.S. 362, 412, 120 S.Ct. 1495, 1523, 146 L.E.d2d 389 (2000); *Bell v. Cone*, 535 U.S. 685, 698, 122 S.Ct. 1843, 1852, 152 L.Ed.2d 914(2002). "[I]t is not 'an unreasonable application of clearly established Federal law' for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme] Court." *Knowles v. Mirzayance.* -U.S.-,129 S.Ct.1411,1419, 173 L.Ed.2d 251 (2009)(quoting *Wright v. Van Patten*, 552 U.S. 120, 128 S.Ct., 743,746-47, 169 L.Ed.2d 583 (2008) (*per curiam*); *Schriro v. Landrigan*, 550 U.S. 465, 478, 127 S.Ct. 1933, 167 L.Ed.2d 836 (2007); *Carey v. Musladin*, 549 U.S. 70, 76-77, 127 S.Ct. 649, 654, 166 L.Ed.2d 482 (2006)).

**IV. Grounds No. 1 & 2-** *There was no Sixth Amendment Violation due to the Trial Court's Alleged Inadequate Inquiry into Petitioner's Request to Discharge Counsel and Denial of the Request to Discharge Counsel*:

*A. There is no Constitutional Right of Defendant's Personal Satisfaction with Court-appointed Defense Counsel:*

Gilbert's first two grounds for relief were found by the state appellate court to involve closely related issues under the Sixth Amendment, and they were addressed simultaneously by that court. For his first ground, Gilbert contends that his Sixth and Fourteenth Amendment rights to counsel were violated when the trial court failed to adequately inquire into his request to discharge his counsel prior to the entry of his guilty pleas. He argues this was a result of the "trial court's personal relationship with court appointed counsel" which forced him to "proceed in a criminal case with an unwanted and unreliable counsel who was deficient in his performance." (Pet., p. 20). Gilbert's second ground for relief is an extension of ground one on Gilbert's allegation that the trial court abused its discretion by rejecting his request to dismiss his court-appointed counsel. These two arguments implicate a series of intertwining issues.

The Sixth Amendment provides that: [i]n all criminal prosecutions the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence. . ." This has been judicially construed to require indigent defendants facing incarceration be offered court-appointed counsel unless the accused intelligently and competently waives the right to counsel. See *Nichols v. U.S.*, 511 U.S. 738, 743, 114 S.Ct. 1921, 1925, 128 L.Ed.2d 745 (1994); *Brewer v. Williams*, 430 U.S. 387, 404, 97 S.Ct. 1232, 1243, 51 L.Ed.2d 424 (1977). Gilbert concedes under his first ground that he had court-appointed counsel. The Sixth Amendment does not provide the indigent defendant in a criminal matter with the right to counsel of choice. See *U.S. v. Gonzalez-Lopez,* 548 U.S. 140, 151, 126 S.Ct. 2557, 2565, 165 L.Ed.2d 409 (2006)(citing *Wheat v. U.S.*, 486 U.S. 153,159, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988); *Caplin & Drysdale, Chartered v. U.S.*, 491 U.S. 617, 624, 626, 109

S.Ct. 2646, 105 L.Ed.2d 528 (1989)). [1] Nor does it provide for a meaningful relationship with counsel, or require a trial court to accede to defendant's demand to continue trial until, in defendant's judgment, counsel is better-prepared. See *Morris v. Slappy*, 461 U.S. 1, 13-14, 103 S.Ct. 1610, 75 L.Ed.2d 610 (1983). "The appropriate inquiry focuses on adversarial process, not the accused's relationship with his lawyer." *U.S. v. Cronic*, 466 U.S. 648, 657 n. 21, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984); *Wheat v. U.S.*, 486 U.S. 153,159, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988). " [T]he essential aim of the Sixth Amendment is to guarantee an effective advocate rather than insure that defendant will be represented by a lawyer he prefers." *Wheat*, 486 U.S. at 159, citing *Morris v. Slappy*, 461 U.S. at 13-14.

It is this essential aim of an effective advocate which is placed in issue when there is a guilty plea. "[C]ounsel may still advise his client to plead guilty if that advice falls within the range of reasonable competence under the circumstances." *U.S. v. Cronic*, 466 U.S. at 657, 104 S.Ct. at 2046 (citing *Tollett v. Henderson*, 411 U.S. 258, 266-268, 93 S.Ct. 1602, 1607-1608, 36 L.Ed.2d 235 (1973)). Reasonable competence is the measure of counsel's performance in plea negotiations. The validity of a plea may be challenged due to a lack of reasonably competent advice which negates the

---

[1] On the other hand, the Sixth Amendment does guarantee the right to counsel of choice for "a defendant who does not require appointed counsel," and the denial of counsel of choice in that situation results in structural error. See *U.S. v. Gonzalez-Lopez*, 548 U.S. at 144, 126 S.Ct. at 2561(citing *Wheat v. United States*, 486 U.S. at 159). This structural error has been extended to a situation where, although defendant demanded court-appointed counsel, his relatives retained counsel, and retained counsel retained the services of another attorney (who did not appear on record) but represented defendant in his appeal without defendant's approval of either retained attorney. See *Cottenham v. Jamrog*, 248 Fed. Appx. 625 (6th Cir. Aug. 21, 2007). The central point is that when counsel is retained, defendant has the right of choice, which is especially true when defendant is represented by retained counsel of other than his own choosing.

voluntary and intelligent character of the guilty plea. See *Bradshaw v. Stumpf*, 545 U.S. 175, 186, 125 S.Ct. 2398, 2407, 162 L.Ed.2d 124 (2005); *Hill v. Lockhart,* 474 U.S. 52, 56, 106 S.Ct. 366, 369, 88 L.Ed.2d 203 (1985); *Tollett v. Henderson*, 411 U.S. at 267, 93 S.Ct. at 1608; *McMann v. Richardson*, 397 U.S. 759,771, 90 S.Ct. 1441, 1449, 25 L.Ed.2d 763 (1970). It follows, though, that the validity of a plea may not be challenged when reasonably competent advice turns out in hindsight "to be mistaken either as to the facts or as to what a court's judgment might be on given facts." *U.S. v. Broce*, 488 U.S. 563, 572, 109 S.Ct. 757, 764, 102 L.Ed.2d 927 (1989)(quoting *McMann v. Richardson*, 397 U.S. at770, 90 S.Ct. at 1448; and citing *Tollett v. Henderson*, 411 U.S. at 267, 93 S.Ct. at 1608)).

This is not to say that there is no ability to turn away state-provided counsel and request that another be substituted. There is a limited right of substitution, which in legal shorthand is known as "right to counsel of choice." This right is "hornbook law," [2] and well-established both in the federal and state courts. Right to counsel of choice entails a judicial duty of inquiry into defendant's complaints when there is a request for the substitution of court-appointed counsel. See *U.S. v. Jennings*, 945 F.2d 129, 132 (6th Cir. 1991); opinion clarified 966 F.2d 184 (6th Cir. 1996); *U.S. v. Iles*, 906 F.2d 1122, 1130 (6th Cir. 1990); *State v. Pruitt*, 18 Ohio App.3d 50, 57 (1984); *State v. Deal*, 17 Ohio St.2d 17 (1969); *State v. Coleman*, 37 Ohio St.3d 286 (1988). No explicit request for substitution is required (at least in federal court), so when the "court is on notice of a criminal defendant's dissatisfaction with counsel, the court has an affirmative duty to inquire as to the source

[2] *U.S. v. Iles*, 906 F.2d 1122, 1130 (6th Cir. 1990); *U.S. v. Jennings*, 945 F.2d 129, 132 (6th Cir. 1991), both referring to LaFave and Israel, *Criminal Procedure*, §11.4 at 36 (1984); and see *Benitez v. U.S.* 521 F.3d 625, 632 (6th Cir. 2008)(citing *Iles*).

and nature of that dissatisfaction - regardless of whether the attorney is court-appointed or privately retained." *Benitez v. United States*, 521 F.3d 625, 634 (6th Cir. 2008).

However, this right to counsel of choice in situations where defendant requires court-appointed counsel, has ***not*** been recognized by the U.S. Supreme Court. Such claims do not have a constitutional foundation, and consequently do not invoke "clearly established Federal Law." *See James v. Brigano,* 470 F.3d 636, 643 (6th Cir. 2006); *Wilson v. Parker*, 515 F.3d 682, 696 (6th Cir. 2008). So, in essence the Sixth Amendment guarantees to the indigent defendant in a criminal matter the right to reasonably competent advice from counsel in assessing whether to negotiate a guilty plea and to enter that negotiated guilty plea, but it does not guarantee defendant's personal satisfaction with counsel's performance or advice.

*B. State appellate court Decision:*

The state appellate court found that both the first and second grounds were waived when Gilbert pleaded guilty and made no specific request for substitution of court-appointed counsel:

> {¶ 15} "[A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in *McMann [v. Richardson* (1970), 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763]." *Tollett v. Henderson* (1973), 411 U.S. 258, 267. Thus, "the crucial inquiry in the instant cause becomes whether defendant's plea of guilty constituted a knowing, intelligent and voluntary waiver of his right to" the effective assistance of counsel earlier in the proceedings. *State v. Spates* (1992), 64 Ohio St.3d 269, 272.

> {¶ 16} At the plea hearing, appellant specifically stated that he was satisfied with his attorney's representation. The trial court meticulously complied with the requirements of Crim.R. 11(C), and expressly determined that "this Court is satisfied that you've been informed of your Constitutional rights and that you understand the nature of the charges, the amendments that the State of Ohio placed on the record, the effect of your plea and the maximum penalties that I could impose. I'm also going to find, Mr. Gilbert, that your plea is being made knowingly, intelligently and voluntarily here this afternoon." Accordingly, we find appellant waived any error in the court's disposition of his request to discharge counsel.
>
> {¶ 17} Moreover, appellant never expressly asked the court to discharge his attorney and appoint new counsel. The trial court did not err by failing to inquire into or grant a request that was not made.
>
> *State v. Gilbert,* 2008 WL 94571, ¶¶ 15-17.

*C. Error in Findings of Fact:*

Gilbert challenges the state appellate court's finding (in paragraph 17) that the trial court did not err by failing to inquire into the discharge request. He claims in his second ground that the trial court conducted an incomplete and unfair inquiry, not that it made no inquiry. One would infer from paragraph 17 of the state appellate court decision that the trial court did not conduct any inquiry into Gilbert's request to discharge counsel. This conclusion is clearly incorrect. The state appellate court had in fact inquired about Gilbert's dissatisfaction with court-appointed counsel on the record and subsequently denied Gilbert's requests to discharge counsel and to continue trial. (See Trial Tr. pp. 7- 13, Resp. Ex. 25). Additionally, the state appellate court decision's treatment of the facts in its decision is inconsistent. The state appellate court decision acknowledged Gilbert's complaints of lack of contact with defense counsel to the state trial court, yet found that the trial court had made no inquiry. Compare *State v. Gilbert*, 2008 WL 94571, at ¶¶4, 17. The state appellate court decision

was based on an erroneous factual finding which Gilbert has overcome with clear and convincing evidence. See 28 U.S.C. §2254(e)(1). The state appellate court incorrectly determined a factual issue material to the first and second grounds when in fact, the record established by clear and convincing evidence that the state trial court had conducted a hearing on Gilbert's dissatisfaction with defense counsel, and it should come as no shock that the legal rationale presented in the state appellate court decision is also incorrect.

*D. Application of Governing Law:*

The state appellate court's analysis was an "unreasonable application" of *McMann* and *Tollett, supra*. To start, the state appellate court based its decision on "waiver" of the right to counsel on account of the guilty plea. It is fundamental that effective assistance of counsel in plea proceedings may be "waived." See *Montejo v. Louisiana*, -U.S.-, 129 S.Ct. 2079, 2085, 173 L.Ed. 2d 955 (2009). However, the Sixth Amendment requires waiver of the right to counsel to be knowing, voluntary and intelligent. See *Iowa v. Tovar,* 541 U.S. 77, 80-81, 124 S.Ct. 1379, 1383, 158 L.Ed.2d 209 (2004); and see *Montejo v. Louisiana*, -U.S.-, 129 S.Ct. at 2085(citing *Patterson v. Illinois,* 487 U.S. 285, 292, n. 4, 108 S.Ct. 2389, 101 L.Ed.2d 261 (1988); *Brewer v. Williams,* 430 U.S. 387, 404, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977)).

The state appellate court's conclusion that a guilty plea itself waives the Sixth Amendment right to counsel invites the type of constitutional error discussed in *Brookhart v. Janis,* 384 U.S. 1, 86 S.Ct. 1245, 16 L.Ed.2d 314, 36 O.O 2d 141 (1966), where in effect, counsel entered into a guilty

plea contrary to his client's wishes. As one would expect, the U.S. Supreme Court had little difficulty in finding that the defendant in such a case had not intelligently and knowingly agreed to this "waiver" of counsel's assistance. *Brookhart* , 384 U.S. at 7, 86 S.Ct. at 1248. Counsel does not have the power to enter a plea which is inconsistent with his client's expressed desire and thereby waive his client's constitutional right to plead not guilty. *Id.* So, the rationale used by the state appellate court that Gilbert's guilty plea *ipso facto* waived the Sixth Amendment right to counsel has been strongly repudiated.

Second, another part of the state appellate court's rationale uses the part of *Hill v. Lockhart's* holding that " a defendant who pleads guilty upon the advice of counsel 'may only attack the voluntary and intelligent character of the guilty plea," but truncates the remainder of *Hill*'s holding that the advice from counsel must be within the standards set forth in *McMann* [*v. Richardson*].'" *Hill*, 474 U.S. at 56, 106 S.Ct. at 369 (quoting *Tollett*, 411 U.S. at 267). The state appellate court over-emphasized the contemporaneous expression of Gilbert's satisfaction with counsel at the guilty plea. Correct analysis "attach[es] no weight to either [defendant's] expression of satisfaction with counsel's performance at the time of his trial, or to his later expression of dissatisfaction." *Fautenberry v. Mitchell,* 515 F.3d 614, 624 (6th Cir.2008)(quoting *U.S. v. Cronic*, 466 U.S. at 657 n. 21, 104 S.Ct. at 2042 n.1 (citations omitted)). "Thus, at its root, the ineffective-assistance analysis is based on "an objective standard of reasonableness." *Fautenberry v. Mitchell,* 515 F.3d at 624(citing *Strickland v. Washington*, 466 U.S. 668, 688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). The state appellate court's unfortunate choice of the word "waiver," though, does not hide the fact

that state appellate court applied reasoning found in *Hill v. Lockhart.*, *i.e.*, to overcome a guilty plea Gilbert must come forward with evidence of unreasonable or incompetent performance by counsel.

The third and final reason that there was an unreasonable application of clearly established Federal law by the state appellate court is because there had been a misapplication of governing law. Gilbert's arguments concerned his **pre-plea** dissatisfaction with court-appointed counsel. Gilbert had argued that his request to dismiss counsel **before he pleaded guilty** had been denied *McMann*, *Tollett*, and the rationale from *Hill v. Lockhart* were inapplicable to any analysis of Gilbert's pre-plea dissatisfaction with defense counsel and the trial court's failure to discharge defense counsel. There was a misapplication of a governing legal principle to a situation different than intended for that principle. See *Wiggins v. Smith*, 539 U.S. at 520-21, 123 S.Ct. at 2535. The state appellate court's adjudication of a claim is dependent on an unreasonable application of federal law. Consequently, the claim must be resolved without the deference §2254(d)(1) otherwise requires. *Panetti v. Quarterman*, 551 U.S. 930, 953, 127 S.Ct. 2842, 2858 (2007)(citing *Wiggins v. Smith*).

Because "the state court decision did not squarely address the federal constitutional issue in question, but its analysis bears 'some similarity' to the requisite constitutional analysis" the appropriate standard of review is not *de novo*, but is a modified form of review. *Filiaggi v. Bagley*, 445 F.3d 851, 854 (6th Cir. 2006); *see also Dyer v. Bowlen*, 465 F.3d 280, 284 (6th Cir. 2006); *Maldonado v. Wilson*, 416 F.3d 470, 475-76 (6th Cir. 2005), *cert. denied*, 546 U.S. 1101(2006). Under modified review, the federal reviewing court conducts a "'careful' and 'independent' review of the record and applicable law" but with the "focus on the result of the state court's decision,

applying . . .deference to the result reached, not the reasoning used." *Irick v. Bell*, 565 F.3d 315, 320 (6th Cir. 2009)(quoting *Hawkins v. Coyle*, 547 F.3d 540, 546 (6th Cir. 2008); *Maldonado v. Wilson*, 416 F.3d at 476; and see *Knowles v. Mirzayance*, -U.S.-, 129 S.Ct. 1411, 1419 n.2, 173 L.Ed.2d 251 (2009)(" because Mirzayance has not argued that § 2254(d) is entirely inapplicable to his claim or that the state court failed to reach an adjudication on the merits, we initially evaluate his claim through the deferential lens of § 2254(d)").

*E. State appellate court* ***Conclusion*** *was not " Contrary to" or "Unreasonable" Application of Clearly Established Federal Law:*

Although the state appellate court decision misapplied *McMann* and *Tollett*, another U.S. Supreme Court decision, *Morris v. Slappy,* sets the applicable standard to assess the situation which confronted the state trial court at the time of Gilbert's trial. The record establishes that trial had been continued from May 8, 2006 to June 6, 2006, at Gilbert's request because several alibi witnesses had not appeared. (See Trial Tr. p. 3-6). On June 6, 2006, defense counsel informed the state trial court about "having issues" with Gilbert. (Trial Tr. 7). The trial court then went on record and heard from Gilbert about his dissatisfaction with counsel for not talking with him at any of the eight pretrials conducted by that court. (See *State v. Gilbert*, 2008 WL 94571, at ¶ 4; Trial Tr. p. 10). [3] However,

---

[3] Gilbert's complaint in full from the trial transcript was:

THE COURT: . . . I'm prepared to go forward. I know Mr. Hildebrand is prepared to go forward. Mr. Filiatraut is prepared to go forward soon as we have our jury here also. Now unless you want to say or state on the record something otherwise that might sway this Court to think that Mr. Hildebrand may not be ready to proceed accordingly, then I'm not going to be swayed. Is there anything you want to speak to me about or have you had that opportunity to speak to Mr. Hildebrand or maybe you want to speak through him and he can inquire and speak on the record. I don't know, Jack, if you want to do that or, Mr. Gilbert, if there is something you want to say.

THE DEFENDANT: When I used to come all the time for pretrials, Your Honor, I never got to talk

the record shows that a trial strategy had been developed with alibi witnesses, so obviously there had been some communication between Gilbert and his counsel, and on June 6, 2006, counsel was prepared for trial. (Trial Tr. pp. 8-9). Later in the record, Gilbert contradicts himself by relating some of his prior discussions with counsel. (Trial Tr. p. 17)

Nevertheless, even with factual correction, no Sixth Amendment violation is presented. First, the indigent defendant has no right to a "meaningful relationship" with court-appointed counsel. *Morris*, 461 U.S. at 13-14, 103 S.Ct. at 1617. Second, counsel was prepared for trial, there had been a prior continuance and Gilbert does not show that denial of the continuance prejudiced his defense. Denial of continuance did not "rise[] to the level of a constitutional violation [due to] 'an unreasoning and arbitrary 'insistence upon expeditiousness in the face of a justifiable request for delay[.]'" *Burton v. Renico*, 391 F.3d 764, 772 (6th Cir. 2004)(quoting *Morris*, 461 U.S. at 11-12); and see *Powell v. Collins*, 332 F.3d 376, 396 (6th Cir. 2003).

Gilbert complains that counsel was "unwanted and unreliable" but only shows that counsel was unwanted (and this is specious given the record of at least six months of representation and that the case had been set for 8 pretrials. (Trial Tr. pp. 8, 10)). Gilbert also complains about the state trial court vouching for defense counsel. The record shows that the trial court did comment favorably on defense counsel's legal abilities and informed Gilbert about counsel's recent work on Gilbert's case.

---

to anyone. I always had to come to the bailiff and say I'm looking for my lawyer. It's 12:00 o'clock and telling me to go home. I never got a chance to talk to him. When I finally did have a chance to talk to him, his son filled in for him. One day his son talked to me for five minutes and said you set for trial, and I've been set for trial ever since that day.

(Trial Tr. 8-18). This was not prohibited in *Morris*. It simply provided additional reasoning to justify the decision not to delay trial. There was no "unreasoning and arbitrary insistence upon expeditiousness" and consequently, the result or conclusion reached by the state appellate court on Gilbert's first and second grounds was neither "contrary to" nor an "unreasonable" application of clearly established Federal law. Morever, Gilbert's factual correction of the state appellate court decision's findings regarding the trial court's inquiry provide no basis for granting the writ.

**V. Ground No.3** *Trial Court Did not Accept an Involuntary Guilty Plea:*

*A. Guilty Plea must be the product of an Intelligent and Voluntary Decision:*

In his third ground for relief, Gilbert alleges the trial court committed prejudicial error and denied appellant due-process of law by accepting guilty pleas that were not made voluntarily. This claim ties into his first two grounds as Gilbert argues he was coerced to plead guilty once the trial court denied his request to discharge counsel, and there was a "conflict of interest" between himself and counsel.

"[A] guilty plea must be accompanied by 'an affirmative showing that it was intelligent and voluntary.'" *McAdoo v. Elo*, 365 F.3d 487, 494 (6th Cir. 2004)(quoting *Boykin v. Alabama,* 395 U.S. 238, 242, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969)); and see *Brady v. U.S.*, 397 U.S. 742, 748, 90 S.Ct 1463, 1469, 25 L.Ed.2d 747 (1970). "The [Fifth Amendment due process] requirement that a plea of guilty must be intelligent and voluntary to be valid has long been recognized." *Brady v. U.S.*, 397 U.S. at 747 n. 4. The Sixth Amendment's right to effective assistance of counsel has merged

with the foregoing constitutional requirement for a valid guilty plea, "[s]ince an intelligent assessment of the relative advantages of pleading guilty is frequently impossible without the assistance of an attorney." *Brady*, 397 U.S. 748 n. 6. Voluntariness is also impacted because one of the relevant surrounding circumstances to which a defendant should be aware is the possibility of a heavier sentence following trial, whereas the guilty plea may limit the penalty. See *Brady*, 397 U.S. at 749. Accordingly, effective assistance of counsel has also been recognized as a necessary precursor to an intelligent and voluntary guilty plea following plea negotiations. See *Brady*, 397 U.S. at 750; *McMann v. Richardson*, 397 U.S. 759, 767-68, 90 S.Ct. 1441, 25 L.Ed.763 (1970).

In Federal habeas corpus proceedings, "the state generally satisfies its burden by producing a transcript of the state court proceeding." *Garcia v. Johnson*, 991 F.2d 324, 326 (6th Cir. 1993); *McAdoo*, 365 F.3d at 494. "Factual findings of a state court that the plea was proper generally are accorded a presumption of correctness." *Garcia*, 991 F.2d at 326; *Railey v. Webb*, 540 F.3d 393, 417 (6th Cir. 2008). However, while the record constitutes a formidable barrier to a collateral attack on a guilty plea, that barrier "is not invariably insurmountable." *Blackledge v. Allison*, 431 U.S. 63, 74, 97 S.Ct.1621,1629, 52 L.Ed.2d 136 (1977). A guilty plea cannot stand when "'induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e.g. bribes).'" *Mabry v. Johnson*, 467 U.S. 504, 509, 104 S.Ct. 2543, 2547, 81 L.Ed.2d 437 (1984), reversed on other grounds, *Puckett v U.S.*, 129 S.Ct. 1423 (2009),(quoting *Brady v. U.S.*, 397 U.S. 742, 755, 90 S.Ct. 1463, 1472, 25 L.Ed.2d 747 (1970). "In administering the writ of habeas corpus . . . the federal courts cannot fairly adopt a *per se* rule

excluding all possibility that a defendant's representations at the time of his guilty plea were so much the product of such factors as misunderstanding, duress, or misrepresentation by others as to make that plea a constitutionally inadequate basis for imprisonment (footnote omitted)." *Blackledge v. Allison*, 431 U.S. at 75, 97 S.Ct. at 1630; see also *Machibroda v. United States*, 368 U.S. 487, 82 S.Ct. 510, 7 L.Ed.2d 473 (1962); *Fontaine v. United States*, 411 U.S. 213, 93 S.Ct. 1461, 36 L.Ed.2d 169 (1973). "Ultimately, "[t]he standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31, 91 S.Ct. 160, 164, 27 L.Ed.2d 162 (1970); *Parke v. Raley*, 506 U.S. 20, 29, 113 S.Ct. 517, 523, 121 L.Ed.2d 391 (1992).

*B. State appellate court Decision:*

The state appellate court found no factual bases for Gilbert's claim of an involuntary, coerced plea. The state appellate court decision's reasoning commenced with the finding of proper pleas, which carried over from the prior two grounds :

> {¶ 16} At the plea hearing, appellant specifically stated that he was satisfied with his attorney's representation. The trial court meticulously complied with the requirements of Crim.R. 11(C), and expressly determined that "this Court is satisfied that you've been informed of your Constitutional rights and that you understand the nature of the charges, the amendments that the State of Ohio placed on the record, the effect of your plea and the maximum penalties that I could impose. I'm also going to find, Mr. Gilbert, that your plea is being made knowingly, intelligently and voluntarily here this afternoon." Accordingly, we find appellant waived any error in the court's disposition of his request to discharge counsel.
>
> * * *
>
> {¶ 18} Appellant's fifth assignment of error claims the court erred by accepting a guilty plea which was not voluntary. He suggests that his pleas were coerced, and that the court did not adequately inquire whether the pleas were voluntary. In support of his contention that the pleas were coerced, appellant claims the court's denial of

> his request to discharge his appointed attorney left him "saddled with counsel who was unwanted, unprepared, and uninterested. Trial with such representation was not an option." This argument implies that appellant's plea was coerced because his attorney was not ready or willing to proceed to trial, yet the court would not allow him to discharge counsel. Dramatic though these arguments sound, however, none of these assertions is supported by the record. As noted above, appellant never expressly asked the court to discharge his attorney, and only obliquely raised the matter on the day of trial by having his attorney inform the court that he had "issues" with counsel. There is no evidence counsel was unprepared to go to trial, or that he was "uninterested." Furthermore, appellant said that he was satisfied with his attorney's representation at the plea hearing. Accordingly, we find appellant has not supported his contention that his plea was coerced because he was being forced to go to trial with an attorney who was unprepared.
>
> {¶ 19} The trial court specifically asked appellant whether there had been any threats or promises made to him, or inducements for him to change his plea, and appellant said no. The court expressly found that appellant's plea was voluntary. The mere fact that the court did not specifically ask whether he was coerced does not undermine the court's finding that the plea was voluntary. Therefore, we overrule the fifth assignment of error.
>
> *State v. Gilbert*, 2008 WL 94571, at ¶¶ 18-19.

*C. Application of Governing Law:*

The state appellate court decision began with the finding that the procedures of Ohio Criminal Procedure Rule 11(C) were followed to indicate that Gilbert understood the nature of the charges against him and voluntarily entered the plea. Ohio Criminal Procedure Rule 11(C), is an analog to its federal counterpart Rule 11(c), and pleas taken in accordance with its procedures,

comport with constitutional requirements.[4] These findings were made in the context of a state issue, but they are fully relevant to Gilbert's constitutional claim, and this court is required to defer to this conclusion unless clearly erroneous. See *Garcia*, 991 F.2d at 326; *Railey v. Webb*, 540 F.3d at 417. Gilbert has not overcome the presumption of correctness accorded factual findings of voluntary and intelligently entered guilty pleas under §2254(e)(1).

Gilbert's arguments presume facts which contradict the findings in the state appellate court decision. Unlike the first two grounds, though, Gilbert cannot establish that defense counsel was "unprepared and uninterested." All that Gilbert can establish is that defense counsel became "unwanted" that morning when trial was to commence, and this claim has been dealt with under the first and second grounds.

---

[4] Rule 11(C) of the Ohio Rules of Criminal Procedure is not identical to its federal counterpart, but suffices to comport with constitutional requirements. As noted by the Six Circuit:

> Ramos's plea colloquy was governed by Ohio R.Crim. P. 11, since he pleaded guilty in Ohio state court. For the limited purposes of this appeal, however, the plea colloquy can be said to have conformed to the aspects of Fed.R.Crim.P. 11 (a rule similar but not identical to Ohio Rule 11) that assure constitutional due process, since the court's colloquy complied with, inter alia, Federal Rule 11's requirement that "[t]he court shall not accept a plea of guilty or nolo contendere without first, by addressing the defendant personally in open court, determining that the plea is voluntary and not the result of force or threats or of promises apart from a plea agreement."[Former] Fed.R.Crim.P. 11(d). Since this is an appeal of the denial of a habeas petition, we are not permitted to review whether the plea colloquy conformed with the strictures of Ohio Rule 11, but only whether it comported with the requirements of constitutional due process. See *Norris v. Schotten*, 146 F.3d 314, 328 (6th Cir.1998).
>
> *Ramos v. Rogers*, 170 F.3d 560, 564 n.2 (6th Cir. 1999).

As the state appellate court decision noted regarding alleged coercion, Gilbert had been asked, "had there been any threats or promises been made to you or inducements for you to change your plea this afternoon?" (Trial Tr. p. 40). To which Gilbert responded, "No, sir." (*Id.*). The record negates his claim of coercion and remains a formidable barrier to Gilbert's arguments based on unsupported and contrary assertions. The law in these instances is absolutely clear, "[t]he subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Blackledge v. Allison*, 431 U.S. at 74, 97 S.Ct. at 1629. Accordingly, the state appellate court decision that Gilbert's pleas was intelligent and voluntary was neither "contrary to" nor an "unreasonable" determination of clearly established Federal law, and it was not an unreasonable determination of the facts.

**VI. Ground No. 4** *Motion to Withdraw Guilty Plea is not Critical Stage and there was no due process violation:*

In his fourth ground for relief, Gilbert argues that he was denied effective assistance of counsel "by virtue of counsel['s] conflict of interest with regard to petitioner[']s motion to withdraw [his] guilty plea." (Habeas Pet., p. 23). Gilbert is essentially claiming his counsel misrepresented his reasons for wanting to withdraw his guilty plea by failing to include Gilbert's dissatisfaction with counsel as the reason for the motion. He also alludes to the trial court preventing him from establishing counsel's ineffectiveness. Ohio Criminal Rule 32.1 provides that "to correct manifest injustice[,] the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea." *State v. Bush,* 96 Ohio St.3d 235, 237, 773 N.E.2d 522, 524

(2002). Ohio's criminal procedure allows for a post-sentence motion to withdraw a guilty or no-contest plea. The state appellate court found no abuse of discretion in the trial court's decision to deny the motion to withdraw the guilty plea because the motion was premised on the misstatement that Gilbert did not understand the consequences of consecutive sentencing. See *Gilbert*, 2008 WL 94571 at ¶8. The state appellate court further found that Gilbert' argument that the received ineffective assistance of counsel in prosecuting the motion to withdraw guilty plea relied on evidence outside the record and therefore had to be presented in a petition for state post-conviction relief under Ohio Rev. Code §2953.21(A). *Gilbert*, at ¶¶20-21.

It is unnecessary to address the state appellate court's procedural arguments nor resolve the merits of Gilbert's claims in his fourth ground. Gilbert's arguments fail to sustain a Sixth Amendment or Fourteenth Amendment claim. The U.S. Supreme Court has restricted the right to counsel, hence the right to effective assistance of counsel, to "critical stages." See *Iowa v. Tovar*, 541 U.S. 77, 80-81, 124 S.Ct. 1379, 1383, 158 L.Ed.2d 209 (2004); *Maine v. Moulton*, 474 U.S. 159, 170, 106 S.Ct. 477, 88 L.Ed.2d 481 (1985). There is no right to counsel at other stages of prosecution or appeal and the defendant is not entitled to effective assistance of counsel under the Sixth Amendment at non-critical stages. See *Kirby v. Illinois*, 406 U.S. 682, 695, 92 S.Ct. 1877, 1885, 32 L.Ed.2d 411 (1972)(pre-indictment lineup); *U.S. v. Wade*, 388 U.S. 218, 228, 87 S.Ct. 1926, 1933, 18 L.Ed.2d 1149 (1967)(analysis of the accused's fingerprints, blood sample, clothing or hair); *Ross v. Moffitt*, 417 U.S.600, 610, 94 S.Ct. 2437, 2444, 41 L.Ed.2d 341 (1974)(discretionary appeal to state supreme court).

The Second Circuit analyzed a claim similar to Gilbert's in *Hines v. Miller*, 318 F.3d 157 (2nd Cir. 2003), noting the lack of guidance from the U.S. Supreme Court on ineffective assistance of counsel in prosecuting defendants' *pre-sentence* motion to withdraw guilty plea due to counsel' coercion and conflict of interest. See *id.*, 318 F.3d at 159, 162-63. *Hines* elaborated that several approaches have been applied to pre-sentence ineffective assistance of counsel claims as "whether the underlying motion had sufficient merit to create an actual conflict of interest or present a 'plausible alternative defense strategy.'" *Id.*, at 163 (collecting cases), treating the matter as a right to counsel under former Federal Rule 32 (See *U.S. v. Caban*, 962 F.2d 646, 648-50 (7th Cir. 1992)), or analyzing the matter as a deprivation of the right to counsel under *Cuyler v. Sullivan*, 446 U.S. 335 (1980)(See *U.S. v. Ellison*, 798 F.2d 1102, 1106-09 (7th Cir. 1986)). *Hines* concluded that none of these varying approaches to motions to withdraw guilty pleas is sanctioned by the U.S. Supreme Court. The Second Circuit in *Hines* pointed out that the U.S. Supreme Court has neither specifically addressed lack of representation in a pre-sentence motion to withdraw guilty plea (as had occurred in *Hines*), nor formulated an analysis for this type of claim. See *Hines*, 318 F.3d at 163.

As *Hines* illustrates, a *pre-sentence* motion to withdraw guilty plea presents a very weak claim. Gilbert's motion, however, was made post-plea. See *Gilbert*, 2008 WL 94571 at ¶ 8. A post-plea motion to withdraw guilty plea presents no case at all to support the claim of ineffective assistance of counsel for the post-plea motion is not a critical stage of the criminal prosecution or appeal. Assessment of a critical stage looks to whether significant consequences that may flow from it :

> In order to assess if a given portion of a criminal proceeding is a critical stage, we must ask how likely it is that significant consequences might have resulted from the

Case: 1:08-cv-01867-DAP Doc #: 11 Filed: 08/31/09 26 of 31. PageID #: 430

> absence of counsel at the stage of the criminal proceeding. In *Lundberg*, we have the floor: the likelihood must be more than absent. But what is the threshold of adequacy for the "potential[ity]" of the "substantial prejudice to defendant's rights"? *Coleman*, 399 U.S. at 9, 90 S.Ct. 1999 (quoting *Wade*, 388 U.S. at 227, 87 S.Ct. 1926). There must be a reasonable likelihood that such prejudice will arise from complete absence of counsel. The Supreme Court has used the standard of "reasonable likelihood" as a guiding tool in the jurisprudence of effective assistance of counsel. See, e.g., *United States v. Gonzalez-Lopez*, --- U.S. ----, 126 S.Ct. 2557, 2563, 165 L.Ed.2d 409 (2006) ("Counsel cannot be 'ineffective' unless his mistakes have harmed his defense (or, at least, unless it is reasonably likely they have).").
>
> *Van v. Jones*, 475 F.3d 292, 313 (6th Cir. 2007), cert. denied, 128 S.Ct. 708 (2007).

Post-sentence motions to withdraw guilty pleas are not critical stages. A critical stage is "a step of a criminal proceeding ... that h[olds] significant consequences for the accused." *Van v. Jones* 475 F.3d at 317(quoting *Bell v. Cone*, 535 U.S. 685, 696, 122 S.Ct. 1843, 1851, 152 L.Ed.2d 914 (2002) (footnote omitted)). First, it has been long-established as a matter of Federal criminal procedure that there is no absolute "right" to withdraw a guilty or *nolo contendere* plea even before sentencing. See *U.S. v. Buckles*, 843 F.2d 469, 470-71 (11th Cir. 1988), *cert denied*, 490 U.S. 1099 (1989); *U.S. v Read*, 778 F.2d 1437, 1440 (9th Cir. 1985); *U.S. v. Boone*, 869 F.2d 1089, 1091 (8th Cir. 1989); *U.S. v. McFarland*, 839 F.2d 1239, 1241 (7th Cir. 1988), *cert. denied*, 486 U.S. 1014 (1988); *U.S. v. Badger*, 925 F.2d 101, 103 (5th Cir. 1991); *U.S. v. Moore*, 931 F.2d 245, 248 (4th Cir. 1991), *cert. denied*, 502 U.S. 857 (1991); *Government of the Virgin Islands, v. Berry*, 631 F.2d 214, 219 (3rd Cir. 1980); *U.S. v. Rodriguez*, 968 F.2d 130, 140 (2nd Cir.1992), *cert. denied*, 506 U.S. 847 (1992).

Second, it is unthinkable that a Sixth Amendment right to effective assistance of counsel would exist for a *post-sentence* motion as a "critical stage" of the criminal persecution. Ohio's post-sentence motion to withdraw plea diverges from Federal procedure. Federal procedure prohibits post-sentence motions to withdraw guilty plea. Former Rule 32(d) applied to permit withdrawal for "fair and just" reason before sentence, but was inapplicable "at any later time" and instead required federal defendants to exercise direct appeal or motion to vacate under 28 U.S. §2255. The prohibition of a post-sentence motion to withdraw plea continues under current Rule 11(e). [5] As Federal procedure has recognized after entry of the judgment sentencing a defendant, the right of direct appeal as of right accrues, which is a critical stage. See *Evitts v Lucey*, 469 U.S. 387, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985). There has been no Federal recognition of a right to a post-sentence motion to withdraw guilty plea, and it follows that there is no right to effective assistance of counsel at such proceeding.

Finally, Ohio's procedure does not require such a motion as a prerequisite for an appeal from a guilty or no-contest plea, so it is redundant to a direct appeal challenging the plea. The meter of a post-sentence motion is "manifest injustice" which is addressed to the sound discretion of the trial court. [6] Its precept does not call for technical counsel-assisted legal argument. It does serve as

---

[5] (e) **Finality of a Guilty or Nolo Contendere Plea**. After the court imposes sentence, the defendant may not withdraw a plea of guilty or nolo contendere, and the plea may be set aside only on direct appeal or collateral attack.

Federal Rules of Criminal Procedure, Rule 11

[6] As set out by the Ohio Supreme Court in *State v. Smith,* 49 Ohio St.2d 261-261, 361 N.E.2d 1324, 3 O.O. 3d 402 (Ohio 1977):

> 1. A defendant who seeks to withdraw a plea of guilty after the imposition of sentence has the burden of establishing the existence of manifest injustice. (Crim.R. 32.1).

a means to short-circuit Ohio's 30 day limit for timely appeal. However, it is not a substitute for direct appeal. No significant consequences flow from this Ohio procedure. It follows that there is no reasonable likelihood of prejudice from complete absence of counsel at a post-sentence motion to withdraw guilty plea. As a result, the state appellate court decision's conclusion to deny Gilbert's claims about counsel's performance in the motion to withdraw guilty plea was neither "contrary to" nor an "unreasonable" determination of "clearly established" Federal law.

Likewise, it follows that since there is no Federal analog for post-sentence motion to withdraw guilty plea, Gilbert cannot demonstrate a Fourteenth Amendment denial of due process, but at most only a denial under state law. "[I]t is not the province of a federal habeas court to reexamine state-court determination on state-law questions" except in extraordinary situations where the error resulted in a *fundamentally unfair trial*. See *Mullaney v. Wilbur*, 421 U.S. 684, 691, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975); *Lewis v. Jeffers*, 497 U.S. 764, 780, 110 S.Ct. 3092, 3102, 111 L.Ed.2d 606 (1990); *Estelle v. McGuire*, 502 U.S. 62, 67-68, 112 S.Ct. 475, 479, 116 L.Ed.2d 385 (1991); *Pulley v. Harris*, 465 U.S. 37, 41, 104 S.Ct. 871, 874-5, 79 L.Ed.2d 29 (1984). Obviously, Gilbert's arguments concern counsel's performance post-trial and not at trial.

---

2. A motion made pursuant to Crim.R. 32.1 is addressed to the sound discretion of the trial court, and the good faith, credibility and weight of the movant's assertions in support of the motion are matters to be resolved by that court.

3. An undue delay between the occurrence of the alleged cause for withdrawal of a guilty plea and the filing of a motion under Crim.R. 32.1 is a factor adversely affecting the credibility of the movant and militating against the granting of the motion.

**VII. Ground No. 5** *Clearly Established Law in Deciding Grounds 1, 2 and 4.*

In his fifth ground for relief, Gilbert claims that the Ohio appeals court abused its discretion and denied him his constitutional rights to due-process and equal protection of the law when it failed to apply "clearly established" Federal law in deciding three assignments of error, currently asserted as grounds 1, 2, and 4. Respondent argues that this ground is patently meritless because the state appellate court decision addressed Gilbert's arguments.

This ground fails to raise a free-standing issue. It is a continuation of Gilbert's Sixth Amendment arguments. Gilbert cited *Strickland v. Washington*[7] and *Cuyler v. Sullivan,*[8] to the Ohio Supreme Court as the foundation for his denial of effective assistance of counsel leading to his guilty pleas and in his motion to withdraw them. Prior to *Strickland*, *Cuyler* recognized that "[a] guilty plea is open to attack [in the state courts] on the ground that counsel did not provide the defendant with 'reasonably competent advice,'" and contained some discussion on multiple representation. *Cuyler v. Sullivan* 446 U.S. at 344-47, 100 S.Ct. at 1716-17. *Strickland* followed to set the meter for violation of the constitutionally guaranteed Sixth Amendment right to counsel by requiring the criminal defendant to make two showings (and by implication the court to consider): first, whether counsel's performance was deficient, so that counsel was not functioning as the "'counsel 'guaranteed the defendant by the Sixth Amendment,'" and; second whether "that the deficient performance prejudiced the defense," so that "there is a reasonable probability that, but for counsel's

---

7 *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

8 *Cuyler v. Sullivan,* 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980).

unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. at 686-8, 104 S.Ct. at 2064; *Williams v. Taylor*, 529 U.S. 362, 390-91, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). Gilbert argues that the state appellate court was remiss in it failing to apply these cases a clearly established governing law.

Gilbert's contentions, though, are meritless- not because the state appellate court addressed his arguments raised in his first, second and fourth grounds- but because their resolution despite erroneous fact-finding, was *ultimately* neither "contrary to" nor an "unreasonable" application of clearly established Federal law.

## VII. CONCLUSION AND RECOMMENDATION

Following review of the arguments raised in the petition and applicable law, Gilbert has not demonstrated that he is in custody pursuant to a judgment of the state appellate court which resulted in a decision that was contrary to or involved an unreasonable application of Federal law as determined by the Supreme Court of the United States. He has established that the state appellate court decision was the result of a decision based on an unreasonable interpretation of the facts in light of the evidence in the State appellate court proceeding, but this demonstration did not improve his legal standing regarding his dissatisfaction with defense counsel. See 28 U.S.C. §2254(d)(1) and (2). The record discloses no error resulting in denial of fundamental fairness or cause to hesitate due to the probability of actual innocence. There has been no demonstrated need for an evidentiary hearing. It is recommended that this application for habeas corpus be denied.

s/James S. Gallas
United States Magistrate Judge

*ANY OBJECTIONS* to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of mailing of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See*, *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).

Dated: August 31, 2009