**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **LARRY GILBERT,** | ) | **Case No.  1:08 CV 1867** |
| | ) | |
| **Petitioner,** | ) | **Judge Dan Aaron Polster** |
| | ) | |
| **vs.** | ) | **MEMORANDUM OF OPINION** |
| | ) | **AND ORDER** |
| **STEWART HUDSON,** | ) | |
| | ) | |
| **Respondent.** | ) | |

On August 5, 2008, Petitioner Larry Gilbert filed a Petition Under 28 U.S.C. § 2254 for

Writ of Habeas Corpus by a Person in State Custody ("§ 2254 Petition" or "habeas petition").

(ECF No. 1.)  Therein, Gilbert identified five grounds for relief.  (Id.)  The case was

automatically referred to Magistrate Judge James S. Gallas for preparation of a Report and

Recommendation ("R&R") pursuant to Local R. 72.2(b).  (Non-document entry of 9-9-08.)

After reviewing the habeas petition, Respondent's Return of Writ (ECF No. 9), and Gilbert's

unsigned Traverse (ECF No. 10), the Magistrate Judge issued an R&R recommending that the

Court deny the habeas petition (ECF No. 11).  The R&R, which was issued on August 31, 2009,

stated that any objections to it must be filed with the Clerk of Court within ten days of the

mailing of the notice.  (ECF No. 11, at 31.)

Five weeks later, on October 5, 2009, when no objections had been filed, the Court

issued a Memorandum of Opinion and Order adopting the R&R's recommendation that the

habeas petition be denied.  (ECF No. 12.)  The court noted that failure to timely file written

objections to an R&R "constitutes waiver of a *de novo* determination by the district court of an issue covered in the report."  (Id. at 2 (*citing Thomas v. Arn*, 728 F.2d 813 (6th Cir. 1984), *aff,d*, 474 U.S. 140 (1985) and *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981)).

On October 19, 2009, Gilbert filed a letter asking the Court to reopen the case.  (ECF No. 14.)  Therein, Gilbert stated that he had never received a copy of the R&R, and that he did not receive a copy of the Court's October 5, 2009 Memorandum of Opinion and Order denying his habeas petition until October 9, 2009.  (Id.)  On October 21, 2009, the Court issued an Order stating that it was forwarding a copy of the R&R to him and granting him until November 10, 2009 to file objections, but denied his request to reopen the case.  (ECF No. 15.)

On November 6, 2009, Gilbert filed Petitioner's Objections Against Magistrate Judge Gallas Report and Recommendation ("objections").  (ECF No. 16.)  The objections relate to only two of the five grounds for relief asserted in the habeas petition.  (Id.)  Gilbert acknowledges that the two grounds for relief are interrelated.[1]  Basically, Gilbert argues that the state trial court committed constitutional error, abused its discretion, denied him due process of law and his Sixth Amendment right to counsel when, on the morning of trial, the court failed to inquire into Gilbert's reasons for his dissatisfaction with counsel and grant his request to dismiss his court-appointed counsel.

Upon reconsideration, after reviewing the objections which are well-written, the Court hereby **VACATES** its previous ruling denying Gilbert's request to reopen the case, and

---

[1]In the first ground for relief, Gilbert argues that the state trial court violated his Sixth and Fourteenth Amendment rights when it failed to grant his request to dismiss his court-appointed counsel or to make an adequate inquiry into his complaints regarding counsel.  In the second ground for relief, Gilbert argues that the trial court abused its discretion and denied his rights to due process and counsel when it denied his request to dismiss his court-appointed counsel.

**GRANTS** his request to reopen so that the Court may consider the grounds for relief to which Gilbert properly objects *de novo*.  Fed. R. Civ. P. 72(b)(3).  To provide context for the issues, it is necessary for the Court to relate the following pertinent background information.

The record shows that Gilbert was charged in one indictment with two counts of felonious assault with one- and three-year firearm specifications (arising from an incident that occurred on June 25, 2005), and in a second indictment with one count of felonious assault with one- and three-year firearm specifications (arising from an incident that occurred on March 15, 2006).

Gilbert's trial on the first indictment was scheduled to begin on May 8, 2006.  (See ECF No. 9, Ex. 25 (hereafter, "Tr.") at 1-6.)  On that morning, counsel sought a request for a short continuance, stating:

> Mr. Gilbert has informed me of a few alibi witnesses who are not available.  We have been trying to get in touch with them.  We would like a continuance to have them subpoenaed to be here.  I will provide names and addresses to the prosecutor's office.

(Tr. at 3-4.)  The court explained to Gilbert that it was the court's standard practice to bring the case to trial when the parties are ready to go.  (Id. at 4.)  The court explained, however, that Gilbert was represented by a very able attorney and that if his attorney represented that the alibi witnesses would help Gilbert's case, it would be a disadvantage to Gilbert not to allow the continuance.  (Id. at 4-5.)  Accordingly, the court granted Gilbert's request for a continuance of the trial to June 6, 2006 noting that, unless there is an emergency, the parties should be prepared to go forward.  (Id. at 5.)

The record shows that, on the morning of June 6, 2006 and while waiting for a jury, Gilbert's counsel informed the court that Gilbert was having "issues" with counsel's

representation.  (See generally Tr. at 7-15.)  The court handled this matter in the following

manner:

> THE COURT:    Mr. Gilbert, Mr. Hildebrand, your attorney, has indicated to this Court just briefly and a few minutes ago that you are indicating that you are having issues with Mr. Hildebrand.  I don't know what the issues may be.  I don't want to know too much about it.
>
> One of the things I want to make sure – I know Mr. Hildebrand practiced in this Court, practiced in this building for a number of years.
>
> He's on all the assigned counsel lists as well as being successful as a private practicing attorney.  His ability to try cases would go without question here in this Court.
>
> Now, I understand you are asking or maybe questioning the relationship or him being prepared to go forward today on this matter.  I do want to have some conversation with you about that.
>
> I'm not likely to dismiss Mr. Hildebrand to delay this matter.  The State of Ohio Assistant County Prosecutor Kevin Filiatraut is here on behalf of the State of Ohio.  I know these two gentlemen are both well respected in this courtroom and have had conversations a number of times.
>
> If I looked at my card, and my bailiff would tell me, we've been here on a number of occasions for pretrials, at least dating back to January.  January 11th was the first pretrial.  Then we had successful pretrial[s] on the 13th, 31st of January and in February on the 23rd, on the 7th of March, the 13th of March, the 30th of March, April 25th, and then coming up to this trial date that we're set for today.
>
> There has been a lot of information, discovery questions and preparing for trial that I think both parties have been actively engaged in.  With that being said, I know you indicated to Mr. Hildebrand – I don't know whether you are just not happy with conversations that maybe Mr. Filiatraut has had with Mr. Hildebrand, and he obviously has to tell you those things, and I'm sure he's done so.
>
> I'm prepared to go forward.  I know Mr. Hildebrand is prepared to go forward.  Mr. Filiatraut is prepared to go forward soon as we have our jury here also.  Now, unless you want to say or state on the record something otherwise that might sway this Court to think that Mr. Hildebrand may not be ready to proceed accordingly, then I'm not going to be swayed.
>
> Is there anything you want to speak to me about or have you had that opportunity to speak to Mr. Hildebrand or maybe you want to speak through him and he can inquire and speak on the record.  I don't know, Jack, if you want to do that or, Mr. Gilbert, if there is something you want to say.
>
> THE DEFENDANT:    When I used to come all the time for pretrials, Your Honor, I never got to talk to anyone.  I always had to come to the bailiff and say I'm looking for my lawyer.  It's 12:00 o'clock and telling me to go home.

-4-

I never got a chance to talk to him.  When I finally did have a chance to talk to him, his son filled in for him.  One day his son talked to me for five minutes and said you set for trial, and I've been set for trial ever since that day.

THE COURT:    Like I said, I've gone back to January.  So there is at least five, six, seven, eight times you have been set for pretrial.

THE DEFENDANT:    I kept going home, sir.

THE COURT:    I understand.  I'm saying pretrials have been had.  You know Mr. Hildebrand's phone number and where the office is.  There could have been an opportunity to meet with him.

I'm sure he attempted to meet with you at his office or even here.

Now, just like other attorneys, they have other places to be as well.  This case was set for trial almost a month ago, May 8, 2006, and at that time Mr. Hildebrand was here.

THE DEFENDANT:    Yes, sir.

THE COURT:    There was a request for continuance so the matter could be – again, discovery could be exchanged.  So it's been a month since the last time that I saw you and we were called for trial that Mr. Hildebrand asked for a continuance.

I think I told you at that time I grant everybody at least one continuance.  That is a reasonable continuance.  That would have been your opportunity if the State wasn't prepared today or they had issues with their witnesses.

I know everybody is lined up here to go.  I know there are doctors that are specifically coming in, I believe, Mr. Filiatraut, that are set to come in tomorrow morning.

MR. FILIATRAUT:    Yes, Your Honor.  I have a doctor from Richmond Heights Hospital scheduled to come in tomorrow morning.  The victim and other witnesses are scheduled to testify today.  The State is definitely prepared to go to trial today.

THE COURT:    So, Mr. Gilbert, I really don't find any reason to dismiss Mr. Hildebrand.  You have an opportunity, and I'm sure – something I always do:  At one point I'll ask Mr. Filiatraut, "Have you had an opportunity to offer a plea bargain?"

I don't know if you are innocent or guilty, but as you sit here, you are innocent, okay?  That is what I presume until a jury would convict you or acquit you.  Mr. Filiatraut, Mr. Hildebrand are going to have conversations because I'm asking them to.

THE DEFENDANT:    Thank you, sir.

THE COURT:    So you understand that.  There will be discussions about this case, the other case, 479137, and then it's my understanding there is another case that may be coming as well, a possible carrying concealed weapon case, from Mr. Filiatraut.  Is that Shaker?

MR. FILIATRAUT:    Shaker Heights, Judge.

THE COURT:    Shaker Heights, February, where they found a loaded gun, possibly.  I think that might be you.  They are concerned about that as well.
But those matters can be discussed between these two gentlemen.  I'll ask for them to have open discussions in my courtroom.  I let both of them come in and sit in my chambers so we can have an open discussion as well.
If I can aid them, help them in any fashion with trying to work out a plea agreement or give some indication of probation or sentencing, or things of that sort, I'll do that.  So it's an open door policy in my courtroom.

THE DEFENDANT:    Okay.

MR. HILDEBRAND:    You Honor, I think Mr. Gilbert should be aware of the fact that pretrials normally take place back in chambers.  They don't take place in the courtroom.

THE COURT:    Right.  Mr. Gilbert, for example, and I know my bailiff said it to me this morning, Mr. Hildebrand was here at ten till 9:00 and met with Mr. Filiatraut.  There was pictures, I think.  I heard them talking.
I think there were line-up pictures, a [911] tape, and Mr. Hildebrand took off to go to another courtroom.  I think that is when you came in looking for him.
That is how it happens a lot.  If I'm here on the bench and Mr. Hildebrand has pretried something, he may scoot out the back door to get to the elevator and go to another courtroom.  Sometimes you may not see him.
All I want to say is there have been these pretrials, and no doubt in my mind that these two gentlemen and/or representative of the Assistant County Prosecutor's office, somebody, had discussions with either Mr. Hildebrand or his son regarding this matter.

THE DEFENDANT:    Okay.

THE COURT:    So we'll wait and see where we are with the jury. . . .

(Tr., at 7-15.)  The court then turned the discussion to Gilbert's question regarding bond on his

second criminal case (id. at 15-22), after which the court recessed so that counsel could continue

bond and plea discussions (id. at 22-23).

The record shows that, upon reconvening, counsel reported that, although the parties were prepared to go to trial on the first indictment, they had reached a plea agreement with respect to both indictments.  (See generally Tr. at 26-52.)  Regarding the first indictment, Gilbert pled guilty to one count of felonious assault with a three-year firearm specification in exchange for dismissal of the second felonious assault count and firearm specification.  (Id.)  Regarding the second indictment, Gilbert pled guilty to one count of felonious assault with a one-year firearm specification in exchange for dismissal of the three-year firearm specification.  (Id.)

The record shows that the court conducted a thorough Rule 11 plea colloquy during which Gilbert expressed his understanding of the trial rights he was giving up in order to enter the pleas, and he expressed his satisfaction with counsel's representation.  (See generally Tr. at 29-44.)  When the court discussed the fact that the sentences for the firearm specifications were required to be imposed consecutively to the sentences for the underlying felonious assault convictions, Gilbert expressed confusion over the meaning of the term "consecutive."  (Id. at 33.)  The court thoroughly explained the concept of consecutive sentences to Gilbert, making sure that Gilbert understood the concept.  (Id. at 32-35.)  In summarizing the concept, the Court told Gilbert that his total sentencing exposure was between 8 and 20 years.  (Id. at 34-35.)  When asked if he understood this, Gilbert responded, "Yes, sir.  My lawyer advised me of that."  (Id. at 35.)  The court reconfirmed this understanding a few minutes later.  (Id. at 40-42.)

On July 28, 2006, Gilbert filed a motion to withdraw his guilty pleas, arguing that he did not fully comprehend the effect of consecutive sentences, and that he believed that he would prevail at trial.  (ECF No. 9, Ex. 5.)  On the morning when Gilbert was scheduled to be heard on

this motion, Gilbert informed the court that he had retained new counsel.  (Tr. at 53-56.)

Accordingly, the court discharged his appointed counsel and rescheduled the hearing.  (Id.; see

also ECF No. 9, Ex. 7.)

At the hearing on the motion to withdraw the guilty pleas, Gilbert, who appeared with

retained counsel, stated that he fired his appointed counsel because that counsel had confused

him regarding consecutive and concurrent sentences:

> THE DEFENDANT:    He didn't put it to me appropriate.  He put it in
> like different ways, like I didn't – I didn't really understand it at all.
> He put it to me like everything going to be ran concurrent and different stuff.
> I didn't know the difference between concurrent and consecutive at the time until
> I talked to a different counsel.  That's why I tried to fire Mr. Hildebrand.

(Tr. at 63-64.)  After conducting a thorough hearing on the motion (see Tr. at 57-68), the court

concluded that it found no compelling reason to withdraw Gilbert's guilty pleas and denied the

motion (Tr. at 68).[2]  Retained counsel then raised the issue of the third indictment that had been

brought against Gilbert (i.e., for carrying a concealed loaded weapon).[3]  (See Tr. at 69-71).

Counsel inquired whether, should Gilbert plead guilty to the latest charge, the court would

consider running the sentence for that case concurrent to the sentences that would be imposed on

the other two cases to which Gilbert had entered guilty pleas – to which the court responded in

the affirmative.  (Id.)  After conferring with retained counsel, Gilbert entered a guilty plea to the

---

[2]In discussing his opposition to withdrawal of the guilty pleas, the prosecutor informed the
court that, after Gilbert had pled guilty to the two felonious assault charges on June 6, 2006, the
prosecutor's detectives discovered that Gilbert had threatened a witness to insure that the victim of
his second felonious assault would not show up at any proceedings.  (Tr. at 67.)  The prosecutor
suggested that this was why Gilbert believed he could prevail at trial.  (Id.)

[3]This charges arises from an incident that occurred on February 6, 2006, eight months after
Gilbert feloniously assaulted one person and 5 weeks before he feloniously assaulted another.

-8-

third indictment.  (Id.)  After conducting the requisite Rule 11 colloquy, the court accepted the

plea and scheduled a sentencing hearing.  (See Tr. at 71-80.)

On September 1, 2006, the court sentenced Gilbert to a total of 14 years in prison.  His

convictions were affirmed on direct appeal.  *See State v. Gilbert*, No. 88806, 2008 WL 94571

(Ohio App. 8 Dist Jan. 10, 2008).

Of relevance to this discussion are two assignments of error Gilbert raised on direct

appeal that the appeals court denied.  Gilbert argued on direct appeal that the trial court failed to

make adequate inquiry into his request to discharge counsel before he entered his pleas.  He also

argued that the court erred by denying his request to discharge his counsel.  *Gilbert*, 2008 WL

94571 at ¶ 14.

The appeals court observed that these were closely related issues and addressed them in

the following manner:

Appellant waived these alleged errors when he pleaded guilty.

{¶ 15}  "[A] guilty plea represents a break in the chain of events which has
preceded it in the criminal process.  When a criminal defendant has solemnly
admitted in open court that he is in fact guilty of the offense with which he is
charged, he may not thereafter raise independent claims relating to the deprivation
of constitutional rights that occurred prior to the entry of the guilty plea.  He may
only attack the voluntary and intelligent character of the guilty plea by showing
that the advice he received from counsel was not with the standards set forth in
*McMann* [*v. Richardson* (1970), 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763]."
*Tollett v. Henderson* (1973), 411 U.S. 258, 267.  Thus, "the crucial inquiry in the
instant cause becomes whether defendant's plea of guilty constituted a knowing,
intelligent and voluntary waiver of his right to" the effective assistance of counsel
earlier in the proceedings.  *State v. Spates* (1992), 64 Ohio St.3d 269, 272.

{¶ 16} At the plea hearing, appellant specifically stated that he was satisfied with
his attorney's representation.  The trial court meticulously complied with the
requirements of Crim.R. 11(C), and expressly determined that "this Court is
satisfied that you've been informed of your Constitutional rights and that you
understand the nature of the charges, the amendments that the State of Ohio

placed on the record, the effect of your plea and the maximum penalties that I could impose.  I'm also going to find, Mr. Gilbert, that your plea is being made knowingly, intelligently and voluntarily here this afternoon."  Accordingly we find appellant waived any error in the court's disposition of his request to discharge counsel.

{¶ 17}  Moreover, appellant never expressly asked the court to discharge his attorney and appoint new counsel.  The trial court did not err by failing to inquire into or grant a request that was not made.

*Gilbert*, 2008 WL 94571 ¶¶ 14-17.

Gilbert raised these two interrelated issues in his first and second grounds of relief in the § 2254 Petition.  Again, Gilbert argues that the state trial court committed constitutional error, abused its discretion, denied him due process of law and his Sixth Amendment right to counsel when, on the morning of trial, the court failed to inquire into Gilbert's reasons for his dissatisfaction with counsel and grant his request to dismiss his court-appointed counsel.

In order to establish his habeas claims, Gilbert must show that the state court's adjudication of his claims resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  28 U.S.C. § 2241.

Gilbert cannot establish a habeas claim because the state court correctly determined that Gilbert waived this issue when he pled guilty to the felonious assault charges.  It has long been held by the Supreme Court that, when a criminal defendant has admitted under oath in open court that he is in fact guilty of the offenses with which he is charged, "he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea."  *Tollett v. Henderson*, 411 U.S. 258, 267 (1973).  Rather, he may

only attack the voluntary and intelligent character of the guilty plea by showing that counsel's advice was not reasonably competent.  *Id*.

When questioned in court about why he wanted to change his guilty pleas, Gilbert responded that his court-appointed counsel did not properly explain the concept of consecutive versus concurrent sentences to him, and confused him.  Gilbert cannot show that any alleged incompetence prejudiced him because the court explained in detail the concept of consecutive sentences to Gilbert and the fact that his sentencing exposure was 8 to 20 years.  The court confirmed <u>twice</u> during the Rule 11 colloquy that Gilbert understood this concept and his sentencing exposure.  Thus, even if he could show that counsel incompetently explained consecutive sentences to him, he cannot show that he was prejudiced thereby.

In any event, prior to entering the guilty pleas, Gilbert told the court that he was satisfied with counsel's representation.

The state appeals court also correctly found that Gilbert never expressly asked the court to discharge his attorney and appoint new counsel.  The record shows that Gilbert complained to the trial court about the paucity of communications he had had with counsel, and the trial court discussed those issues <u>at length</u> with Gilbert.   At the conclusion of that discussion, Gilbert still failed to ask the court to dismiss his counsel and appoint new counsel, and he did not request a continuance of the trial date to obtain new counsel.

Gilbert now argues that he had no communications whatsoever with counsel prior to entering the guilty pleas.  That factual allegation belies the record which shows, among other things, that Gilbert appeared with counsel in court on May 8, 2006 at which time counsel

requested, and received, a one-month continuance of the trial date to subpoena alibi witnesses on Gilbert's behalf.

Accordingly, Gilbert's objections are **OVERRULED**.  For the reasons stated in the R&R and this Memorandum of Opinion and Order, the § 2254 Petition is hereby **DENIED**.[4]

**IT IS SO ORDERED.**


                                        */s/ Dan A. Polster     November 25, 2009*
                                        **Dan Aaron Polster**
                                        **United States District Judge**

_____

[4]It appears, in passing, that Gilbert wisely chose to enter guilty pleas.  The record shows that Gilbert shot Devonta Maxwell in the stomach on June 25, 2005 (Maxwell narrowly avoided fatal injury and lives with a bullet in his stomach); that Gilbert was arrested for carrying a concealed loaded weapon in Shaker Heights, Ohio on February 6, 2006; that, while out on bond for the Maxwell shooting, Gilbert was involved in the drive-by shooting of Paul McPherson's car and home and that one of the bullets shattered McPherson's window (narrowly avoiding another fatal injury); and that, while out on bond after entering the guilty pleas, Gilbert threatened at least one victim and witness.